UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BAYER CROPSCIENCE LP, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:13CV2375 CDP |
| ) | |
| TEXANA RICE MILL LTD, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

Stearns Bank and Amegy Bank filed cross motions for summary judgment on their claims in this interpleader, seeking a declaration of rights to the Settlement Payment made by Bayer to Texana Rice Mill that now resides in this court's registry. On March 31, 2015, this court held that Amegy had a superior claim, denied Stearns Bank's motion for summary judgment, and granted Amegy's. The action is back before this court on two motions filed by Stearns Bank.

Stearns Bank first asks this court to reconsider its Order and instead hold that it has a superior claim to the Settlement Payment. A review of the Order reveals two sections that require amendment. First, this court misstated the law of priorities under the Uniform Commercial Code. Second, this court's analysis of Stearns Bank's interest in general intangibles requires amendment for clarity.

However, those amendments do not change the ultimate outcome of the motions for summary judgment. Because Stearns Bank has not demonstrated a sufficient basis for altering or amending the Order in its favor, this court will deny the motion to reconsider.

Stearns Bank also requests a stay of this court's Order that the Settlement Payment funds be disbursed from this court's registry and paid to Amegy. Because this case involves legal issues for which there is little Eighth Circuit precedent and because a stay pending appeal would not change the status quo, this court will grant Stearns Bank's motion and issue a stay of disbursement.

**<u>Background</u>**[1]

In 2006, Texana Rice Mill, Ltd., and Texana Rice, Inc. (collectively, Texana), sued numerous Bayer entities and associated entities (collectively, Bayer) related to the spread of Bayer's genetically modified rice into the United States rice supply. Texana asserted tort claims alleging, *inter alia*, lost profits and damage to its equipment, facilities, and goodwill ("the Bayer Suit"). Texana and Bayer settled the case in September 2012, and Bayer brought this interpleader action to adjudicate the competing claims of Texana's creditors against the Settlement Payment. The contested portion of the Settlement Payment, which now resides in

---

[1] The background for this action is more fully set forth in the Memorandum and Order that is the subject of the instant motion. *See* Order, Mar. 31, 2015, ECF No. 118.

this court's registry, amounts to approximately $933,697.90.  Only two of the interpleaded creditors are relevant to the instant motion:  Stearns Bank, N.A., and Amegy Bank, N.A.  Both claim an amount exceeding the Settlement Payment.

Stearns Bank lent $2.65 million to Texana in September 2002.  As collateral, Texana pledged its fixtures, chattel paper, equipment, and general intangibles (whether then existing or thereafter acquired) and all proceeds thereof.  Stearns Bank filed a Uniform Commercial Code financing statement describing the collateral on September 20, 2002, and it filed amendments and continuation statements in 2003, 2007, and 2012.  After Texana defaulted on the loan, Stearns Bank sued in state court, where it obtained a final summary judgment against Texana on January 21, 2010, in the amount of $3,161,405.94 plus attorney's fees and interest.  Stearns Bank foreclosed upon the Deed of Trust and the Stearns Security Agreement on June 1, 2010; three days later, it bought all collateral at the foreclosure sale at the sale price of $268,000.  ECF No. 78-6.  Stearns Bank filed its Application for a Writ of Garnishment against the Bayer Entities in the District Court of Harris County, Texas, on October 4, 2012; the writ was issued three days later and then served on the Bayer entities on October 12 and 15, 2012.

Amegy lent Texana $2 million on February 1, 2006, secured by collateral including Texana's inventory, accounts, equipment, furniture, and fixtures, among others (the "Amegy Loan").  Texana defaulted on the Amegy Loan in 2006.  On

June 8, 2007, Texana and Amegy executed a Forbearance Agreement, wherein Amegy agreed to forbear its collections rights on the Amegy Loan in exchange for a security interest in the Bayer Suit, including any recovery or settlement therefrom (the "Claims Agreement"). On June 13, 2007, Amegy filed a UCC financing statement covering the Claims Agreement.[2] As of April 30, 2014, the unpaid principal balance on the Amegy Loan totaled $1,935,749.93.

Thus, the relevant timeline is:

- September 2002 – Stearns Bank obtains its security interest in Texana's fixtures, equipment, general intangibles, including such collateral later acquired and proceeds thereof
- September 2002 – Stearns Bank files a UCC financing statement covering the above collateral
- November 2006 – Texana sues Bayer
- June 2007 –Amegy perfects its security interest in the Bayer Suit
- January 2010 – Stearns Bank obtains final summary judgment against Texana after Texana defaults on its loan
- June 2010 – Stearns Bank forecloses and buys all existing collateral at public auction
- September 2012 – Parties to Bayer Suit notify court of settlement

In the Order of March 31, this court held that Stearns Bank extinguished its security interests when it foreclosed and bought "all" the existing collateral. ECF No. 118. Because those actions by Stearns Bank also extinguished any subordinate interests in that collateral, this court had to determine whether the Bayer Suit was subject to Stearns Bank's secured interests at the time of foreclosure.

---

[2] In the briefing of the summary judgment motions, it was uncontested that Amegy perfected its interest in the Bayer Suit on this date.

The claimants did not contest that the Bayer Suit constitutes a "commercial tort claim" – a special type of collateral protected from inadvertent encumbrance by heightened description requirements and by exclusion from after-acquired property clauses. *See* Tex. Bus. & Com. Code Ann. §§ 9.108 & cmt. 5; 9.109(12); 9.204(b) (West).[3] Amegy was the only party that had a direct interest in the Bayer Suit as a commercial tort claim. However, Stearns Bank asserted an interest in the Bayer Suit as "proceeds" of Texana's equipment and other original collateral. It also argued that it had a right to the Bayer Suit because the suit became a "payment intangible" upon settlement.

In June 2010, there existed only one avenue by which Stearns Bank could assert an interest on the Bayer Suit itself: the Bayer Suit's status as "proceeds" of Texana's equipment and other original collateral.[4] This court relied in part upon *In re American Cartage*, 656 F.3d 82 (1st Cir. 2011), and held that a lawsuit itself could not constitute "proceeds" under the UCC; rather, only the end product of the suit could be proceeds. Because the Bayer Suit did not settle until 2012, Amegy's security interest in the Bayer Suit was unaffected by Stearns Bank's foreclosure.

Stearns Bank also argued that it had an interest in the Settlement Payment because it was a "payment intangible," a subset of general intangibles covered

---

[3] The parties agreed that Texas law governed.

[4] *See* Tex. Bus. & Com. Code Ann. § 9.102(64) (defining proceeds to include "claims arising out of the loss . . . or damage to the collateral").

under its Security Agreement with Texana. This court first held that Amegy's security interest in the Settlement Payment should be considered perfected as of June 2007 – the date when its secured interest in the Bayer Suit perfected. Since Stearns Bank's interest in the payment intangible "did not perfect until the Bayer Suit settled," this court held that Amegy had priority as to the Settlement Payment. Order of March 31, ECF No. 118 at p. 16. As Stearns Bank's foreclosure could not extinguish Amegy's superior interest, Amegy remained as the sole party with a secured interest in the Settlement Payment.

This court granted Amegy's motion for summary judgment, denied Stearns Bank's motion for summary judgment, and ordered that the Settlement Payment be distributed to Amegy in the entirety. ECF Nos. 118, 119. Stearns Bank has now filed two motions. First, it requests that this court reconsider its Order of March 31 and instead grant Stearns Bank's motion for summary judgment. Alternatively, Stearns Bank seeks a stay of the disbursement of the Settlement Payment funds pending appeal.

## Discussion

### A. Motion for Reconsideration

The Federal Rules do not provide for a motion for reconsideration, and so this court construes Stearns Bank's motion as one to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See Innovative Home*

*Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) ("[A]ny motion questioning the correctness of a judgment is functionally a [Rule] 59(e) motion, regardless of how the motion is styled."). "The Rule was adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (quoting Notes of Advisory Committee on 1946 Amendment to Rules, 5 F.R.D. 433, 476 (1946)). Motions under Rule 59(e) serve to correct "manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal citations omitted). They are not to be used to introduce evidence, new legal theories, or raise arguments that could have been offered prior to entry of judgment. *Innovative Home Health Care*, 141 F.3d at 1286. The court "has broad discretion in determining whether to grant a [Rule 59(e)] motion." *Id.*

Stearns Bank asserts neither newly discovered evidence nor errors of fact as the basis for its motion to amend. Rather, the motion is premised on the belief that the court committed manifest errors of law. Specifically, Stearns Bank asserts that the court erred in (1) relying upon *In re American Cartage*, 656 F.3d 82 (2011), to find that an interest in proceeds does not equate to an interest in a lawsuit itself; (2) concluding that Amegy's interest in the Settlement Payment as proceeds of the

Bayer Suit was superior to Stearns Bank's interest as a payment intangible because it perfected first; (3) concluding that Stearns Bank's security interests were extinguished; and (4) failing to conclude that Amegy's secured interest was also extinguished.

Upon reviewing the Order of March 31, it became apparent that this court misstated the law of priorities between perfected security interests when it said "Conflicting perfected security interests on the same collateral are accorded priority based upon whichever interest was first perfected or, if simultaneously perfected, upon whichever secured party first filed a UCC financing statement covering the collateral." This court should have stated: Conflicting perfected interests on the same collateral are accorded priority according to which was first filed or perfected. § 9.322(a)(1). Having made that amendment, this court next turns to the allegations of error.

1. *In re American Cartage*

Stearns Bank first contends that this court made a manifest error of law when it relied in part upon *In re American Cartage*, 656 F.3d 82 (1st Cir. 2011), to determine whether a security interest in "proceeds" from collateral extends to a pending tort claim for damages to that collateral. Stearns Bank stresses that *American Cartage* did not reach the question of whether the proceeds of a tort claim were subject to a secured creditor's interests in original collateral. That

argument misconstrues the relevant inquiry. Stearns Bank foreclosed and bought all its collateral long before the Bayer Suit settled. Under the UCC, those actions extinguished Stearns Bank's secured interests in the collateral as well as any subordinate interests in the same collateral. *See* Tex. Bus. & Com. Code Ann. § 9.617(a). Texana granted to Stearns Bank a security interest its equipment and other original collateral, including proceeds thereof. Proceeds includes "claims arising out of the loss . . . or damage to the collateral." *Id.* at § 9.102(a)(65). As the Bayer Suit was brought, in part, to recover damages to Texana's equipment, this court had to determine whether Stearns Bank had any actual secured interest in the Bayer Suit itself and, if so, whether that interest was superior to Amegy's.

Contrary to Stearns Bank's arguments, *American Cartage* continues to be instructive. That court considered whether a tort claim itself was proceeds of collateral. *Am. Cartage*, 656 F.3d at 87. Although the First Circuit there was evaluating standing to bring the tort claim, *see id.*, its analysis remains relevant to the question in this case. The court analyzed Article 9 of the UCC, its commentary, and the case law. *See id. at* 88. It held that an action itself cannot be proceeds; "only the *end product* of that action – the settlement amount or award – constitutes proceeds." *Id.* at 89 (emphasis in original). That analysis is directly on point, and this court's reliance thereon was not clearly erroneous. This court continues to hold that Stearns Bank's interest in proceeds did not confer any

argument misconstrues the relevant inquiry. Stearns Bank foreclosed and bought all its collateral long before the Bayer Suit settled. Under the UCC, those actions extinguished Stearns Bank's secured interests in the collateral as well as any subordinate interests in the same collateral. *See* Tex. Bus. & Com. Code Ann. § 9.617(a). Texana granted to Stearns Bank a security interest its equipment and other original collateral, including proceeds thereof. Proceeds includes "claims arising out of the loss . . . or damage to the collateral." *Id.* at § 9.102(a)(65). As the Bayer Suit was brought, in part, to recover damages to Texana's equipment, this court had to determine whether Stearns Bank had any actual secured interest in the Bayer Suit itself and, if so, whether that interest was superior to Amegy's.

Contrary to Stearns Bank's arguments, *American Cartage* continues to be instructive. That court considered whether a tort claim itself was proceeds of collateral. *Am. Cartage*, 656 F.3d at 87. Although the First Circuit there was evaluating standing to bring the tort claim, *see id.*, its analysis remains relevant to the question in this case. The court analyzed Article 9 of the UCC, its commentary, and the case law. *See id. at* 88. It held that an action itself cannot be proceeds; "only the *end product* of that action – the settlement amount or award – constitutes proceeds." *Id.* at 89 (emphasis in original). That analysis is directly on point, and this court's reliance thereon was not clearly erroneous. This court continues to hold that Stearns Bank's interest in proceeds did not confer any

interest on the Bayer Suit itself. *Cf. id.* at 89 ("[T]reating commercial tort claims themselves as proceeds would blur any meaningful distinction between the two categories.").

2. Time of Filing or Perfection

Stearns Bank next contends that this court erred when it held that Amegy had a superior interest in the Settlement Payment because Stearns Bank's interest perfected after Amegy's. Stearns Bank correctly highlights the second area requiring amendment, though the ultimate result remains the same.

At the summary judgment stage, Stearns Bank argued that it had priority as to the Settlement Payment because its UCC financing statement governing "general intangibles" was filed before Amegy's interest in the Bayer Suit perfected.[5] This court stated, "Stearns Bank's interest in the payment intangible, being after-acquired collateral, did not perfect until the Bayer Suit settled. As Amegy's interest was the first to perfect, it has priority over the Settlement Payment." ECF No. 118 at p. 16 (citing § 9.322 cmt. 5 & ex. 4). While this Court believes that conclusion was correct, the rationale behind it merits revision.

Payment intangibles are a subset of general intangibles, "under which the account debtor's principal obligation is a monetary obligation." Tex. Bus. & Com.

---

[5] As the Settlement Payment is proceeds of the Bayer Suit, it is considered perfected when the Bayer Suit was perfected. *See* Tex. Bus. & Com. Code Ann. § 9.322(b)(1) ("[T]he time of filing or perfection as to a security interest in collateral is also the time of filing or perfection as to a security interest in proceeds[.]").

- 10 -

Code Ann. § 9.102(62). "[O]nce a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort." § 9.109 cmt. 15. A security interest in after-acquired collateral will not attach to the collateral until the collateral comes into existence and the debtor acquires rights as to the collateral. *See* §§ 9.203(b)(2); 9.204 cmt. 2. The term attach denotes "the point at which property becomes subject to a security interest." § 9.308 cmt. 2.

Stearns Bank filed a UCC financing statement before Texana acquired rights in the Settlement Payment/payment intangible. Thus, its security interest perfected when it attached, *i.e.*, when the Bayer Suit settled and was reduced to a contractual obligation to pay. *See* §§ 9.308 cmt. 2; 9.109 cmt. 15.

The important principle was that Stearns Bank's security interest did not *attach* to the payment intangible until the Bayer Suit settled in 2012. Perfection of Stearns Bank's security interest was relevant only to the extent that it occurred when the interest attached. The Order of March 31 is deemed amended so as to clarify this point.

Stearns Bank argues that its interest in the Settlement Payment attached in November 2006, when the Bayer Suit was filed. However, *Plymouth Savings Bank v. United States*, the sole basis for this argument, involved tax regulations and a

dispute over accounts receivable. *See* 187 F.3d 203, 207 (1st Cir. 1999). That case is simply not relevant to the case at bar.

As a second ground for earlier attachment, Stearns Bank contends that courts have recognized that "proceeds of an anticipated recovery from an impending lawsuit constitute general intangibles." This simply reargues the point rejected above when discussing *American Cartage*. Moreover, *Millenium Bank*, the primary case upon which Stearns Bank relies for this point, is inapposite. In *Millenium Bank*, the Colorado Court of Appeals was required to determine whether a finalized arbitration award was the proceeds of an account or of a general intangible. *Millenium Bank v. UPS Capital Bus. Credit*, 327 P.3d 335, 337 (Colo. Ct. App. 2014). The *Millenium Bank* court was concerned with the types of claims that could become general intangibles and not with timing of attachment. *See generally id.* The cases cited in *Millenium Bank* and by Stearns Bank are also distinguishable on the grounds that they adjudicated rights to resolved claims, they did not involve tort claims, and they predate the 2001 Revision of Article 9, which first allowed a secured interest in tort claims. *See id.* at 338 (citing *Bowlen v. Fed. Deposit Ins. Corp.*, 815 P.2d 1013, 1015 (Colo. Ct. App. 1991) (determining priority of settled claim); *Bd. of Cnty. Comm'rs v. Berkeley Vill.*, 580 P.2d 1251, 1255 (Colo. Ct. App. 1978) (allocating rights to condemnation proceedings); *Corcoran v. Land O'Lakes, Inc.*, 39 F. Supp. 2d 1139, 1148 (N.D. Iowa 1999)

(holding that interest in general intangibles conferred interest in contract claim but not in tort claim itself nor in proceeds of tort claim); *First Am. Bank Valley v. George J. Hegstrom Co.*, 551 N.W.2d 288, 292 (N.D. 1996) (holding that conveyance of general intangibles included breach of contract claim that accrued pre-conveyance and resulting settlement of claim). Stearns Bank had no secured interest in the Settlement Payment when it foreclosed, because the Bayer Suit did not transform into a "payment intangible" until it settled.

      3. <u>Extinguishment of Security Interest</u>

Stearns Bank concedes that its "lien on the foreclosed Texana property" was extinguished upon foreclosure and its subsequent purchase of the property. Stearns Bank Mem., ECF No. 125 at p. 13. However, Stearns Bank alleges that its security interests on "the right of recovery and proceeds of the Settlement Payment" were not extinguished because that collateral was either acquired or came into existence post-foreclosure.

None of the cases cited by Stearns Bank involved a secured creditor who first foreclosed on a security interest and then later raised that same interest against newly acquired collateral or proceeds. *See, e.g.*, *Fricke v. Valley Prod. Credit Assn.*, 721 S.W.2d 747 (Mo. Ct. App. E.D. 1986) (allocating rights to proceeds of collateral obtained before foreclosure); *In re Wiersma*, 324 B.R. 92 (B.A.P. 9th Cir. 2005) (mentioning foreclosure without addressing timeline or effect), *aff'd in*

*part, rev'd in part*, 483 F.3d 933 (9th Cir. 2007) *and aff'd in part*, 227 F. App'x 603 (9th Cir. 2007); *In re Sarah Michaels, Inc.*, 358 B.R. 366 (Bankr. N.D. Ill. 2007) (omitting any discussion of effect of foreclosure), *opinion reinstated sub nom. Helms v. Certified Packaging Corp.*, 551 F.3d 675 (7th Cir. 2008); *BMW Fin. Servs., NA, LLC v. Rio Grande Valley Motors, Inc.*, No. CIV.A. M-11-292, 2012 WL 4623198 (S.D. Tex. Oct. 1, 2012) (same). Stearns Bank provides no support for its argument that this court erred in its application of Section 9.617[6], and amendment of the Order is not warranted.

Stearns Bank notes that the UCC grants a secured creditor the cumulative remedies of foreclosure and judicial process. *See* Tex. Bus. & Com. Code § 9.601. Those remedies may be invoked simultaneously or concurrently. *See* White, Summers, & Hillman, *Uniform Commercial Code* § 34:7 (6th ed.) (collecting cases). Stearns Bank argues that in order for the remedies to be cumulative, foreclosure on the security interest cannot extinguish that security interest. But the cases it cites only state that an initial resort to judicial process will not, whether via merger, *res judicata*, or waiver, strip a lender of its secured status and thereby preclude enforcing a security agreement. *See, e.g.*, *State Bank of Piper City v. A-Way, Inc.*, 504 N.E.2d 737, 408–409 (Ill. 1987); *Ceres Fertilizer, Inc. v. Beekman*,

---

[6] A secured party's disposition of collateral after default discharges the security interest under which the disposition is made and all subordinate security interests or subordinate liens. Tex. Bus. & Com. Code Ann. § 9.617(a)

- 14 -

308 N.W.2d 347, 450–51 (Neb. 1981); *Tax/Investments Concepts, Inc. v. McLaughlin*, 670 P.2d 981, 984 (Okla. 1982). The cases say nothing of a lender who actually elects to enforce a security agreement under Part 6 of Article 9. Stearns Bank provides no reason why the loss of secured status would, by itself, preclude a resort to judicial process.

    4. Effect of Foreclosure on Amegy

Stearns Bank next argues that Amegy's interests were extinguished when Stearns Bank foreclosed and subsequently purchased all existing collateral.[7] However, Amegy had a perfected security interest in the Bayer Suit. In order to discharge that interest, Stearns Bank would have needed an interest superior to Amegy's. As discussed in the Order of March 31 and above, Stearns Bank had no secured interest in the Bayer Suit at the time of its foreclosure, and so could not have extinguished Amegy's interest.

    5. Other Sources of Error

Stearns Bank finally contends that this court erred in its treatment of the Writs of Garnishment issued by the Harris County court. However, this argument

---

[7] At various times in its briefing, Stearns Bank also argues that it only foreclosed on part of its collateral, and so its security interest remains intact as to the remainder. This assertion contradicts the summary judgment evidence, including Stearns Bank's own affiant, who stated, "Stearns Bank duly foreclosed upon the Stearns Deed of Trust and Stearns Security Agreement, *including all "general intangibles" and other collateral* granted to Stearns Bank by the Texana Entities, and Stearns Bank became the successful buyer of *all such collateral* at this foreclosure." David Feriancek Aff. ¶ 17, ECF No. 78 (emphasis added).

was raised neither in Stearns Bank's motion for reconsideration nor in its memorandum in support thereof. Courts generally do not consider arguments first raised in a reply brief, because the other party has not had adequate opportunity to respond to such arguments. *See Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 421, n.5 (8th Cir. 2005) (citing *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 n. 4 (8th Cir. 2004); *see also Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08CV1719 JCH, 2010 WL 1692076, at *2 n.2 (E.D. Mo. Apr. 27, 2010) ("The Court does not address Defendants' assertion . . . because that argument was not addressed in Defendants' opening brief."). This court will, therefore, not address this contention.

### B. Motion to Stay

When considering a motion to stay pending appellate review, a court considers four factors: "(1) the likelihood that a party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 423 (8th Cir. 1996). The court must "consider the relative strength of the four factors, balancing them all." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (internal quotations marks and citation

omitted). After examining each of these four factors, I conclude that a stay is warranted.

The first factor, the appellant's likelihood of success on the merits, is the most important factor in the analysis. *See Brady*, 640 F.3d at 789. As discussed in the Order of March 31, there is little legal precedent dealing with commercial tort claims. There is even less authority from this Circuit dealing with these issues, and so appellate review is appropriate. Stearns Bank has demonstrated a sufficient likelihood of success on the merits to support a stay.

The court likewise finds that the remaining three factors favor a stay. If the court allows the disbursement of funds to Amegy and Stearns Bank prevails on appeal, then the latter faces the prospect of losing the funds or incurring additional legal fees to obtain them. Thus, the second factor, the likelihood that the moving party will be harmed, weighs in favor of a stay. As for the third factor, the issuance of a stay will not greatly injure Amegy; the funds have resided in this court's registry during the pendency of the interpleader. Finally, the public will not be harmed by maintaining the status quo. The court will stay the disbursement of the interpleaded funds.

Accordingly,

**IT IS HEREBY ORDERED** that Stearns Bank's Motion to Reconsider [# 124] is **denied**.

**IT IS FURTHER ORDERED** that on this court's own Motion, the Order of March 31, 2015, is amended, as discussed herein.

**IT IS FURTHER ORDERED** that Stearns Bank's Motion to Stay [# 122] is **granted** and the Clerk of Court shall not disburse the subject funds pending decision by the Court of Appeals.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2015.